## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEANNA BETRAS | * |
| 8757 Georgia Avenue, Suite 400 | * |
| Silver Spring, Maryland 20910 | * |
| | * |
| PLAINTIFF[1], | * |
| | * |
| v. | *    Case No.: |
| | * |
| BGC 135 9th STREET, INC. | * |
| d/b/a RICK'S CABARET PITTSBURGH | * |
| 135 9th Street | * |
| Pittsburgh, Pennsylvania 15222 | * |
| | * |
| And | * |
| | * |
| ALBERT BORTZ | * |
| 3100 North Ocean Boulevard | * |
| Apartment 1509 | * |
| Fort Lauderdale, Florida 33308 | * |
| | * |
| DEFENDANTS. | * |

**********************************************************************

## COLLECTIVE ACTION COMPLAINT

1.      This action is brought by Plaintiff Deanna Betras ("Plaintiff") against Defendants Albert

Bortz ("Mr. Bortz"), individually, and against BGC 135 9th Street, Inc. d/b/a Rick's Cabaret

Pittsburgh (hereafter "Rick's Cabaret") (together, "Defendants").

2.      Specifically, Plaintiff complains that Defendants misclassified Plaintiff as an

"independent contractor" rather than as an employee for the entire time she worked as an exotic

dancer at the Blush Gentlemen's Club and continuing at the Rick's Cabaret Gentlemen's Club.

3.      As a result of this misclassification, Defendants are legally responsible and now liable for

failing to pay Plaintiff required wages under the Federal Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, *et seq*.

---

[1] To avoid retaliation, Plaintiff has used the mailing address of her attorney.

4.      Plaintiff brings this action against Defendants seeking back-pay, restitution, liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief that the Arbitrator deems just, reasonable and equitable in the circumstances.

## PARTIES AND JURISDICTION

5.      Plaintiff is an adult resident of Irwin, Pennsylvania.

6.      Plaintiff hereby affirms her consent to prosecute her claim in this Court and to seek unpaid wages and damages under the FLSA.

7.      Mr. Bortz is an adult resident of Fort Lauderdale, Florida.

8.      From the commencement of Plaintiff's period of employment in about 1998 until a time in 2018, Mr. Bortz was the primary owner and managing officer of One Three Five, Inc., a business entity doing business as Blush Gentlemen's Club & Sports Bar and operating as a gentlemen's club featuring female exotic dancers at the address 135 9th Street, Pittsburgh, Pennsylvania 15222 ("Blush Club").

9.      At all times from the commencement of Plaintiff's period of employment in about 1998 until a time in 2018, Mr. Bortz, individually, was the primary owner of the Blush Club, was the managing member of the Blush Club, individually controlled, managed, and supervised the day-to-day operations of the Blush Club, individually participated substantially in the decision to misclassify Plaintiff and other exotic dancers at the Blush Club as independent contractors rather than as employees, individually participated substantially in the decision to pay Plaintiff and other exotic dancers no wages for work duties performed at the Blush Club, and individually had the authority hire, fire, discipline, or suspend Plaintiff and other exotic dancers.

10.     Rick's Cabaret is a corporation formed in the Commonwealth of Pennsylvania that operates as a gentlemen's club known as Rick's Cabaret featuring female exotic dancers at the

address 135 9th Street Pittsburgh, Pennsylvania 15222.

11.     In or about 2018, Rick's Cabaret purchased the Blush Club.

12.     Following the date of sale in or about 2018, the Blush Club ceased operations and Mr. Bortz no longer held an ownership interest in the gentlemen's club or otherwise participated in operations of the club.

13.     Following the date of sale in or about 2018, managers and officers on behalf of Rick's Cabaret controlled, managed, and supervised the day-to-day operations of the club, made the decision to continue to misclassify Plaintiff and other exotic dancers as independent contractors rather than as employees, made the decision to pay Plaintiff and other exotic dancers no wages for work duties performed at the club, and had the authority to hire, fire, discipline, and suspend Plaintiff and other exotic dancers.

14.      Following the sale, Rick's Cabaret commenced its ownership and operation of the gentlemen's club featuring female exotic dancers at the address 135 9th Street Pittsburgh, Pennsylvania 15222 and the Blush Club ceased operations at the same business address.

15.     Rick's Cabaret operates as a legal successor and continuation of the Blush Club because

  (i)     The businesses operate or operated as a gentlemen's club featuring female exotic dancers;

  (ii)    The businesses operate at the identical business address;

  (iii)   The Blush Club ceased operations and ceased generating revenue when Rick's Cabaret commenced operations and generating revenue at the identical business address;

  (iv)    The businesses provide/offer the same or substantially similar food, spirituous beverages, and female exotic dancer entertainment;

(v)   The businesses provide nearly identical female exotic dancer entertainment to substantially similar customers;

(vi)   Rick's Cabaret retained and continued to employer nearly all the female exotic dancers that were employed by the Blush Club without requirement of further interview, auditioning, or similar vetting; and

(vii)   The businesses subjected Plaintiff and the other female exotic dancers at the club to the same or substantially similar rules, pay structure, fee, fine, and kickback scheme, and independent contractor misclassification.

16.   At or before the time Rick's Cabaret purchased the Blush Club, Rick's Cabaret had actual or constructive notice the Blush Club

(i)   Misclassified its exotic dancers as independent contractors when the exotic dancers should have been classified as employees under the FLSA;

(ii)   Did not pay any wages to its exotic dancer employees; and

(iii)   Failed to pay its exotic dancer employee workforce in compliance with the requirements of the FLSA.

17.   At or before the time Rick's Cabaret purchased the Blush Club, Rick's Cabaret had actual knowledge of lawsuits involving Rick's Cabaret's parent or affiliated entities, the Blush Club, and other similarly situated gentlemen's clubs in Pennsylvania and across the country wherein current and former exotic dancers filed lawsuits and arbitration actions for

(i)   Misclassification as independent contractors; and

(ii)   Failure of the clubs to pay minimum wage compensation and otherwise complying with state and federal labor and employment laws.

18.     At or before the time Rick's Cabaret purchased the Blush Club, Rick's Cabaret had actual or constructive knowledge of potential wage and hour legal claims belonging to Plaintiff and other misclassified exotic dancers at the club against the club.

19.     At or before the time Rick's Cabaret purchased the Blush Club, Rick's Cabaret had actual or constructive notice that it, as a successor entity, would or could be potentially liable as a legal successor for FLSA wage and hour violations perpetrated by the Blush Club.

20.     During the period relevant up until the sale of the Blush Club to Rick's Cabaret in 2018, Mr. Bortz, individually, qualified as Plaintiff's employer and the employer of all other exotic dancers at the club, within the meaning of the FLSA.

21.     Because it qualifies as a legal successor to the Blush Club, Rick's Cabaret is liable as Plaintiff's employer and the employer of all other exotic dancers at the club, within the meaning of the FLSA for the entire period relevant to this action.

22.     During the relevant period, Rick's Cabaret and/or the Blush Club had gross revenue and sales exceeding $500,000.00, sold beer, wine, spirituous beverages, colas, and food that passed in interstate commerce and otherwise qualified as an "enterprise engaged in commerce" under the FLSA.

23.     Prior to the filing of this action, Plaintiff filed an Arbitration Action against Rick's Cabaret before the American Arbitration Association ("AAA") pursuant to an arbitration agreement Rick's Cabaret and Plaintiff.

24.     Rick's Cabaret had knowledge of Plaintiff's prior AAA claim, communicated directly with AAA about the claim, and refused to pay its portion of the fee for the arbitration action and otherwise refused to participate in the action, resulting in AAA's dismissal of the arbitration action.

25.     Because Rick's Cabaret refused to arbitrate Plaintiff's FLSA claim or otherwise honor its own arbitration agreement, Rick's Cabaret is estopped from compelling arbitration as to Plaintiff's claims or the substantially similar claims of any similarly situated individuals that may join or opt-in to the action that may have signed or otherwise be bound by an arbitration agreement identical or substantially similar to the agreement presented by Rick's Cabaret and signed by Plaintiff.

26.     Equity and the doctrine of Equitable Estoppel will not permit Rick's Cabaret to pick and choose when it will compel the arbitration of FLSA wage claims by current and former exotic dancer employees and when it will knowingly waive arbitration.

27.     The relief sought in this action against Defendants arises under the FLSA, a Federal Statute, and Subject Matter Jurisdiction is therefore proper in this Court based on Federal Question.

28.     The alleged acts and omissions giving rise to this action occurred primarily in or around Pittsburgh Pennsylvania and in consideration of this fact and the foregoing, Venue and Personal Jurisdiction are proper in the United States District Court for the Western District of Pennsylvania.

## **FACTS**

29.     Plaintiff was employed as an exotic dancer by Rick's Cabaret and/or the Blush Club, to which Rick's Cabaret is a legal successor, for the period of about 1998 through about January 2019.

30.     During the period of Plaintiff's employment, the number of shifts Plaintiff worked varied from week to week.

31.     During the period of Plaintiff's employment, the exact number of hours Plaintiff

worked varied from week to week.

32.    On information and belief, one or both of the Defendants have possession, custody, and control of time and/or sign in records and "house fee" payment records for Plaintiff.

33.    At all times, agents on behalf of Defendants had actual knowledge of all hours Plaintiff worked each shift through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiff's work duties.

34.    At no time during Plaintiff's period of employment did any Defendant ever pay Plaintiff any wages for hours that Plaintiff worked each week.

35.    At all times relevant, Defendants totally failed to pay wages or any kind of compensation to Plaintiff for work duties performed.

36.    At all times relevant, Defendants misclassified Plaintiff as an independent contractor when she should have been classified under the FLSA as an employee.

37.    At all times, Defendants controlled all aspects of the job duties Plaintiff performed inside the club through employment rules and workplace policies.

38.    At all times, Defendants controlled the method by which Plaintiff could earn money at the club by establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers.

39.    At all times, Defendants required Plaintiff to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendant and/or the Blush Club.

40.    Defendants hired Plaintiff and had the ability to discipline her, fine her, fire her, and adjust her work schedules.

41.    Defendants, through supervisors and managers, supervised the work duties Plaintiff

performed to make sure her job performance was of sufficient quality.

42.     Defendants conducted initial interviews and vetting procedures for Plaintiff and, at the club's sole discretion, the club's management and/or ownership could deny any Plaintiff access or ability to dance and/or work at the club.

43.     At all times, Defendants had the right to suspend or send Plaintiff home and away from the club if Plaintiff violated rules or policies or if the club's ownership or management, at its discretion, did not want Plaintiff at the club.

44.     As a condition of employment with Defendants, Plaintiff was not required to have or possess any requisite certification, education, or specialized training.

45.     At all times relevant, Defendants were in the business of operating a gentlemen's club featuring female exotic dancers and at all times it was the job duty of Plaintiff to perform as an exotic dancer for the club's customers.

46.     In addition to failing to pay Plaintiff wages for hours worked, Defendants required Plaintiff to pay the club or its ownership or management a house fee or kickback of $25.00-$50.00 or more for each shift Plaintiff worked.

47.     At all times during the relevant period, without legal excuse or justification, Defendants regularly and customarily kept and/or assigned to management tips and gratuities Plaintiff received from customers.

48.     Prior to and during the relevant period, Defendants were sued for misclassifying exotic dancers as independent contractors and failing to pay minimum wage compensation to exotic dancers as required by the FLSA and state wage and hour laws.

49.     On information and belief, prior to and during the relevant period, Defendants had actual or constructive knowledge that for at least the past twenty (20) years that exotic dancers like

Plaintiff and other exotic dancers at Rick's Cabaret and/or the Blush Club were employees and not independent contractors and were owed minimum wage compensation under the FLSA.

50.     On information and belief, prior to and during the relevant period, Defendants had actual or constructive knowledge the club misclassified Plaintiff as an independent contractor, failed to pay her wages as required by the FLSA, unlawfully withheld or assigned tips Plaintiff received from customers, and unlawfully charged Plaintiff kickbacks, fines, and surcharges during her employment period.

51.     Because Defendants are in the sole custody and control of all records relating to Plaintiffs' employment, Plaintiff can only estimate her unpaid wage damages based on her personal knowledge of her shifts worked and wages/tips deducted, taken, or assigned during the 3-year statutory recovery period.  Based on Plaintiff's personal recollection and estimations, Plaintiff believes she is owed unpaid wages and restitution in the amount of about seventy thousand dollars ($70,000.00), plus statutory liquidated damages in an equal amount ($70,000.00), plus payment of her attorney's fees and costs in an amount to be determined by post-judgment petition.

## COLLECTIVE ACTION ALLEGATIONS

52.     Plaintiff, on behalf of herself and other similarly situated exotic dancers that worked at Defendants' Blush Club and/or Rick's Cabaret gentlemen's club during the period 3-years prior to the filing of this action period, is pursuing this matter as a Collective Action pursuant to FLSA Section 216(b).

53.     In the present case the number of class members is believed to exceed one hundred (100) current and former exotic dancers at the Blush Club / Rick's Cabaret.

54.     All class members are readily identifiable from information and records in the

possession and control of the Defendants.

55.     In the present case, the questions of law or fact common to the members of the class

predominate over any questions affecting only individual class members.

56.     Plaintiff and all other current or former exotic dancers worked for Defendants at

Defendants' club during the relevant period were each denied FLSA required minimum wage

compensation and are owed unpaid FLSA minimum wage compensation, the return of

unlawfully taken and/or assigned tips, and statutory damages for each hour worked during the

relevant period.

57.     Each similarly situated current and former exotic dancer is entitled to notice of this

action and an opportunity to opt-in to assert FLSA claims substantially similar to those alleged

herein on behalf of Plaintiff.

## CAUSES OF ACTION
## VIOLATION OF THE FLSA

58.     Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs

above as if each were set forth herein.

59.     The FLSA provides that no employer shall employ any employee for an hourly wage of

less than the federal minimum wage, currently $7.25 per hour.

60.     The FLSA prohibits a taking or assignment by Defendants or management or non-

customarily tipped employees of tips or gratuities received by tipped employees from customers.

61.     As set forth above, Defendants failed to pay Plaintiff and other similarly situated

individuals minimum wage compensation as required by the FLSA.

62.     As set forth above, Defendants unlawfully kept and/or assigned tips and gratuities

Plaintiffs and other similarly situated individuals received from customers.

63.     The acts and omissions set forth in this Complaint for which Defendants are liable were

performed or omitted willfully and intentional, and not in good faith.

**<u>RELIEF SOUGHT</u>**

WHEREFORE, Plaintiff prays for relief as follows:

A.      Judgment finding Defendants estopped from compelling Plaintiff or any putative Plaintiff to arbitration pursuant to an arbitration agreement identical or substantially similar to the agreement signed by Plaintiff;

B.      Certifying this matter as a Collective Action pursuant to FLSA Section 216(b);

C.      Judgment against Defendants for failing to pay free and clear minimum wage compensation to Plaintiff and any opt-in Plaintiffs as required by the FLSA;

D.  Judgment against Defendants for unlawfully taking and/or assigning tips and gratuities received by Plaintiff and/or opt-in Plaintiffs from customers in violation of the FLSA;

E.  Judgment against Defendants for unlawfully charging Plaintiff and opt-in Plaintiffs kickbacks, fines, fees, and surcharges in violation of the FLSA;

F.  An award to each Plaintiff and opt-in Plaintiff in the amount of all free and clear unpaid wages found to be due and owing under the FLSA;

G.  An award to Plaintiff and each opt-in Plaintiff in the amount of all tips and gratuities unlawfully taken and/or assigned;

H.  An award to Plaintiff and each opt-in Plaintiff in the amount of the return of all kickbacks, fines, fees, and surcharges assessed against or otherwise taken from Plaintiff and each opt-in Plaintiff;

I.  An award of statutory liquidated damages in amounts prescribed by the FLSA;

J.  An award of attorneys' fees and costs to be determined by post-hearing petition; and

K.  Such further relief as may be necessary and appropriate.

Respectfully submitted,

Dated: July 8, 2019

/S/ Samuel J. Cordes
Samuel J. Cordes, Esq.
Rothman Gordon
Third Floor, Grant Building
310 Grant Street
Pittsburgh, Pennsylvania 15219
(412) 338-1100 (ph)
Email:  SJCordes@rothmangordon.com

Gregg C. Greenberg, Esq.
(To be Admitted Pro Hac Vice)
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
Email:  GGreenberg@ZAGFirm.com

Garry G. Geffert, Esq.
(To be Admitted Pro Hac Vice)
114 S. Maple Avenue
P.O. Box 2281
Martinsburg, West Virginia 25402
(304) 262-4436
Email:  rt@wvdsl.net

*Counsel for Plaintiff and the Collective*